IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Weldon W. Stewart, Jr., #295095         )
                                        )   Civil Action No.8:09-842-SB-BHH
                    Petitioner,         )
                                        )
          v.                            )   **REPORT AND RECOMMENDATION**
                                        )   **OF MAGISTRATE JUDGE**
Warden of Lieber                        )
Correctional Institution,               )
                                        )
                    Respondent.[1]      )
                                        )

The Petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. # 14.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on March 31, 2009.[2] On July 13, 2009, the Respondent moved for summary judgment. By order filed July 15, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On September 17, 2009, the Petitioner filed a response opposing the Respondent's Summary Judgment Motion.

---

[1] A prisoner's custodian is the only proper respondent in a habeas corpus action. *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004). The Petitioner is currently incarcerated at the McCormick Correctional Institution. (Dkt. # 10.) Therefore, the Warden at McCormick Correctional Institution should be substituted as the proper respondent.

[2] This date reflects that the petition was date stamped as received on March 31, 2009, at the Lieber Correctional Institution mailroom. (Pet. Attach.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

## I. PROCEDURAL HISTORY/FACTS

The Petitioner, a state prisoner, is currently incarcerated at the McCormick Correctional Institution. In October 2002, the Petitioner was indicted for the desecration of human remains and murder. (App. 765-68.) The Petitioner represented himself at trial and the Public Defender Wade R. Crow acted as standby counsel. Prior to trial, the Petitioner pled guilty to the desecration of human remains charge. (App. 78.) The Petitioner went to trial on the murder charge. A jury trial was held on July 28 - August 1, 2003, with the honorable Paul M. Burch presiding. The jury found the Petitioner guilty of the lesser included offense of voluntary manslaughter and Judge Burch sentenced the Petitioner to thirty years for the manslaughter and nine years for the desecration charge, to run consecutively. (App. 763.) The Petitioner timely filed a notice of appeal.

Acting Chief Appellate Defender Joseph L. Savitz, III, represented the Petitioner on his direct appeal. On October 21, 2004, Savitz filed with the South Carolina Court of Appeals a petition to be relieved as counsel and an *Anders* brief raising the following issue: The judge erred by refusing to instruct the jury on involuntary manslaughter. (App. 769.) On April 20, 2005, the South Carolina Court of Appeals dismissed the Petitioner's appeal in an unpublished opinion, *State v. Tyler*, Op. No. 05-UP-284 (S.C. Ct. App. 2005). (App. 779.) The remittitur was sent down on May 23, 2005.

On April 18, 2006, the Petitioner filed an application for post-conviction relief ("PCR") raising the following ground for relief: "My appellant counsel was ineffective." (App. 781.) On November 15, 2006, an evidentiary hearing was held before the Honorable John M. Milling. (App. 799.) The Petitioner was present and represented by Delton W. Powers, Jr., Esquire. On January 8, 2007, Judge Milling dismissed the Petitioner's PCR application and denied him PCR. (App. 827.) The Petitioner timely filed a notice of appeal.

Assistant Appellate Defender Katherine H. Hudgins, of the South Carolina Office

2

of Appellate Defense, represented the Petitioner on his PCR appeal. On October 25, 2007, Hudgins filed a petition to be relieved as counsel and a *Johnson* petition for a writ of certiorari raising the following issue: "Did the PCR judge err in refusing to find appellate counsel ineffective for failing to argue that the trial judge erred in admitting two unauthorized documents into evidence?" On March 13, 2008, the Petitioner filed a pro se responsive brief raising the following issues:

> 1. Did the PCR court err in failing to find appellate counsel ineffective for failing to argue the trial judge erred in giving a jury instruction on voluntary manslaughter?
>
> 2. Did the PCR court err in failing to find appellate counsel ineffective for failing to argue that the trial judge erred in admitting a photograph of the decedent's body into evidence?
>
> 3. Did the PCR court err in failing to find appellate counsel ineffective for failing to argue that the trail judge erred in allowing Staton Wright to provide hearsay testimony?

On June 23, 2008, the Petitioner filed a supplemental pro se response in which he further discussed the voluntary manslaughter issue. On March 18, 2009, the South Carolina Supreme Court denied the petition and granted counsel's motion to be relieved, and the remittitur was sent down on April 3, 2009.

In this federal habeas petition, the Petitioner raises the following grounds for relief, quoted verbatim:

> **Ground One:** Did the trial court deprive me of my constitutional right to due process by failing to instruct the jury on involuntary manslaughter?
>
> **Supporting Facts:** The trial court failed to instruct the jury on the requested jury instruction on involuntary manslaughter. There was evidence presented during the trial which supported the jury instruction and the trial court's failure to instruct the jury on this instruction deprived me of a fair trial.
>
> **Ground Two:** Did appellate counsel deprive me of my constitutional right to effective assistance of counsel?
>
> **Supporting Facts:** Appellate counsel was ineffective for failing to argue on my appeal: 1) the trial judge erred by charging the

3

> jury on voluntary manslaughter when there was no evidence to support the charge, 2) the trial judge admitted two documents that were not authenticated, 3) the trial judge admitted photographs that were irrelevant and prejudicial, and 4) the trial judge allowed hearsay testimony.

(Habeas Pet.)

## II. **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that

4

specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

5

## EXHAUSTION AND PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007). Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

8

### C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

### D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

9

## III. DISCUSSION

**Ground One**

In Ground One, the Petitioner alleges his due process rights were violated because the trial court did not instruct the jury on the lesser included offense of involuntary manslaughter. The Respondent contends that this issue is procedurally barred and fails on the merits. The undersigned agrees.

On direct appeal, the Petitioner raised the issue of whether the trial judge erred by refusing to instruct the jury on involuntary manslaughter. (App. 769.) The South Carolina Court of Appeals dismissed the Petitioner's appeal in an unpublished opinion, *State v. Stewart*, Op. No. 05-UP-284 (S.C. Ct. App. 2005). (App. 779.) The Respondent contends, inter alia, that the Petitioner did not raise this issue in the context of a violation of his federal constitutional due process rights. *See, e.g. State v. McWee,* 472 S.E.2d 235 (S.C. 1996) (holding Eighth Amendment challenge to parole eligibility not preserved because no constitutional basis was raised at trial). Furthermore, the Respondent notes that on appeal, the Petitioner did not mention due process or any federal constitutional basis for his claim. As no federal constitutional issue was raised at trial or on appeal, then any federal constitutional issue is procedurally barred from federal review. *See, e.g. Coleman v. Thompson,* 501 U.S. 722 (1991) (holding issue not properly raised to the state's highest court, and procedurally impossible to raise there now is procedurally barred from review in federal habeas).

Because the Petitioner did not raise this claim as one of a violation of his federal constitutional rights, whether he was entitled to an involuntary manslaughter charge is an issue involving state substantive criminal law which is not a cognizable or reviewable claim in federal habeas corpus. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions.").

Even if the Petitioner had properly raised this issue as involving his federal constitutional due process rights, the claim stills fails. The United States Supreme Court has held that the failure to include jury instructions on a lesser included may present a federal question in capital cases. *See Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). However, the United States Supreme Court explicitly reserved the question as to whether this ruling extends to non-capital cases. *Id.* at 638 n. 14. There is a split among the circuit courts as to whether the failure to give an instruction on a lesser included offense in a non-capital case presents a federal question. *See Bates v. Bodison,* 2009 WL 2423766 (D.S.C. 2009)(cases cited therein).

The Fourth Circuit has addressed this issue in an unpublished per curiam opinion, *Robinson v. N.C. Attorney Gen.,* 238 F.3d 414 (4th Cir. Dec.7, 2000) (unpublished). In *Robinson,* the court noted that the Supreme Court had not addressed this issue and there was no consensus among the circuit courts on this question. Therefore, the court concluded that extending the holding in *Beck* to non-capital cases would "require the enunciation and retroactive application of a new rule, in violation of § 2254(d)(1) and *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)." *Id.*

As stated above, to warrant federal habeas relief, a state court decision must be contrary to, based upon an unreasonable application of "clearly established federal law as decided by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1), (2). It is Supreme Court precedent, and not that of the circuit courts, that applies pursuant to § 2254. *Bustos v. White,* 521 F.3d 321, 325 (4th Cir. 2008) (stating that "it is Supreme Court precedent, and not Fourth Circuit precedent, to which we look in applying the AEDPA standard of review") (*citing Williams v. Taylor,* 529 U.S. 362, 381-82, 390 n. 15 (2000)). Thus, in the absence of any United States Supreme Court precedent holding that the failure to provide a lesser included offense instruction in non-capital cases implicates a federal right, it cannot be said that the state court violated clearly established federal law as

11

decided by the Supreme Court of the United States. Accordingly, this claim is without merit and should be dismissed.

**Ground Two**

In Ground Two, the Petitioner alleges his appellate counsel was ineffective for failing to raise several issues on appeal. The Respondent contends this issue is procedurally barred and without merit. The undersigned agrees.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id.* at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. *Id.* at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in *Strickland*, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell,* 506 U.S. 364 (1993).

    **1. Voluntary Manslaughter Charge**

The Petitioner first contends his appellate counsel was ineffective for failing to raise on direct appeal the trial court's decision to charge voluntary manslaughter. "Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Cole,* 525 S.E.2d 511 (S.C. 2000). In determining whether voluntary manslaughter should be charged as a lesser offense of murder, the trial court must view the evidence in the light most favorable to the defendant. The charge need not be given "where it clearly appears that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter." *State v. Pittman*, 647 S.E.2d 144 (S.C. 2007) (internal citation omitted).

The sudden heat of passion, upon sufficient legal provocation, which mitigates a felonious killing to manslaughter, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence." *State v. Byrd,* 474 S.E.2d 430, 432 (S.C.1996) (internal quotations omitted). Although words alone may not constitute sufficient legal provocation, words accompanied by some overt, threatening act may be sufficient. *Id*.

At trial, the State requested a charge on voluntary manslaughter based on evidence that the Petitioner had gotten mad at the victim and "flipped." (App. 685.) The Petitioner objected to a jury charge on voluntary manslaughter stating that did not want both murder and voluntary manslaughter or murder and involuntary manslaughter submitted to the jury. *Id.* Importantly, he did not object on the ground that there was not evidence to support a charge of voluntary manslaughter. In his PCR proceeding, the Petitioner raised this issue specifically asserting that evidence of both heat of passion and sufficient legal provocation were required and that the record contained no evidence of provocation. (App. 784; 822.) The PCR court rejected the claim, noting that in the Petitioner's statements to police, the Petitioner had stated that he and the victim had gotten into a fight and the victim had pulled a knife or a razorblade on him. (App. 831-32.) The PCR court found that an assault with a deadly weapon is sufficient legal provocation under state law to support a voluntary manslaughter charge. *Id.* On appeal, the Petitioner argued there was no evidence of provocation and the state court denied certorari.

First, the undersigned notes that at trial the Petitioner did not object on the ground that there was not evidence to support a charge on voluntary manslaughter. Thus, the issue of whether there was evidence to support such a charge was not preserved for appellate review.

Furthermore, in any event, there was evidence which supported a voluntary manslaughter charge. The Petitioner told a number of different versions as to how the victim died. In his opening statement, the Petitioner stated that he was not trying to hurt his girlfriend but was merely trying to get her home, when he accidentally fell on her and killed her. (App. 115-16.) In an oral statement, initially given to an officer, the Petitioner stated that he had an argument with the victim, and they were walking down the path when she fell and did not get up. There was no mention of a knife or the Petitioner holding the victim. (App. 403-05.) In another oral statement given to Officer Boston, the Petitioner said he and the victim got into an argument about another girl, and she pulled a knife on him. He claimed that he grabbed her and was holding her, and she fell, after which he fell on her. (App. 376.) In a written statement, the Petitioner claimed the victim pulled out a razorblade and came at him, and he dodged it twice. He stated he had one of his arms wrapped around her to hold the blade and one around her upper shoulder, and was walking down the path with her when he tripped and fell on top of her. (App. 381.) At trial, the Petitioner claimed that the victim was upset with him and she pulled out a small box cutter and swung it at him. He stated he did not really think she was trying to cut him and he grabbed the victim's arm and started to carry her to meet their ride since he did not think the victim was going to calm down. She was "shaking" and "twisting" in Petitioner's arms and telling him to let her go, when the Petitioner tripped and fell on top of the victim. (Supp. App. 25-29; App. 552-53.)

Stanton Wright testified the Petitioner said he "flipped" after the victim told him she had sex with another guy (App. 196) and Anastaia Love testified that she thought the Petitioner and the victim had been arguing (App. 600). Further, the Petitioner stated he was in a "rage" in his "Calamity" document. (App. 457.)

Clearly, there were inconsistencies in the testimony at trial. However, inconsistencies in the evidence would not deprive a defendant of the benefit of evidence supporting a jury charge on a lesser-included offense. *State v. Knoten,* 555 S.E.2d 391

14

(S.C. 2001). Here, there was evidence to support voluntary manslaughter, i.e. that the victim was angry with the Petitioner and pulled a knife or box cutter out and swung it at him. It is proper to charge voluntary manslaughter where the defendant and the victim had been in a heated argument prior to the murder. *See State v. Davis,* 298 S.E.2d 778 (S.C. 983) (holding voluntary manslaughter charge was proper where a witness testified that defendant and victim had been fighting); *State v. Gardner*, 64 S.E.2d 130 (S.C. 1951) (holding a charge of manslaughter was warranted where the defendant said his wife "jumped on me" and "me and her got into it" since these expressions could be construed to mean that there was some overt, threatening act or a physical encounter had occurred just prior to the defendant's stabbing of his wife). Therefore, trial counsel was not deficient for requesting a charge on voluntary manslaughter. Further, the petitioner has not shown prejudice. Accordingly, this issue is without merit.

### 2. Admissibility of Evidence

Next, the Petitioner contends his appellate counsel was ineffective for failing to raise on appeal an issue regarding the admission at trial of two allegedly unauthenticated documents: 1) the "Motive" letter and 2) letters to the victim's mother.

At trial, the "Motive" letter was admitted into evidence and it was attributed to the Petitioner. This letter describes the theories on who killed the victim and suggests witnesses and how they should be questioned. (App. 468-72.) Detective Gurley testified that she received a call from the jailers saying the Petitioner wanted to talk to her. (App. 463.) When she visited the Petitioner, Detective Gurley testified that he gave her the "Motive" letter. The Petitioner objected and argued that he never saw Detective Gurley at the jail, and the "Motive" letter had not been analyzed for a handwriting match like other documents. Detective Gurley stated the Petitioner had handed her the document, and since it looked like the handwriting in the rest of the documents, she assumed he had written it. (App. 463-68.) The trial court allowed the Motive letter into evidence. (App. 468.)

At the PCR hearing, the Petitioner discussed the issue. (App. 810-11.) The PCR

court denied relief, finding that the evidence was sufficient for authentication, and that no prejudice could have resulted given the other evidence and writings admitted at trial. (App. 832-33.)

Authenticity of documents may be established by indirect or circumstantial evidence. *State v. Wilson,* 145 S.E.2d 20 (S.C. 1965). Alleged deficiencies in authentication testimony go to weight, not admissibility. *State v. Freiburger,* 620 S.E.2d 737 (S.C. 2005). *See also United States v. Dozie*, 27 F.3d 95, 98 (4th Cir.1994)(holding that under Rule 901(b)(3), expert opinion as to the authenticity of handwriting is not necessarily required, and where one document is properly authenticated, the jury can compare the writing on that document with the writing on another); United States v. Woodson, 526 F.2d 550, 551 (9th Cir.1975)( "In the absence of extreme or unusual circumstances . . ., [there is] no reason why handwriting comparisons cannot be made by [the trier of fact], and conclusions drawn from them, either in the presence or absence of expert opinion.")(citations omitted). Here, there were other documents in evidence which the Petitioner admitted writing and the jury could compare handwriting. Further, the detective testified she personally received the document from the Petitioner after he asked to see her.

Moreover, there Petitioner had not shown any prejudice. The Petitioner has not shown that an expert handwriting analysis witness would have discredited the document. *Hamilton v. Lafler*, 2008 WL 5102243 (E.D. Mich. 2008)(holding in habeas action that petitioner has not shown that he was prejudiced by counsel's conduct failure to produce a handwriting expert given that he has not provided evidence that a handwriting expert would have provided favorable testimony). Additionally, the Petitioner gave multiple versions of events to police and at trial as to how the victim's death happened, and it cannot be said the absence of this one document which theorized an unknown killer raises a reasonable probability of a different result.

As to the letter to the victim's mother, this issue is also without merit. The Petitioner contends his appellate counsel was ineffective for failing to raise an issue regarding the

admission of a letter he wrote to the victim's parents. At trial, while the Petitioner was testifying, the solicitor questioned him about a letter which was sent to the victim's parents. (App. 569-575.) The Petitioner denied writing the letter and objected to the solicitor's refusal to show him the envelope. (App. 570-74.) Later at trial, the State called the victim's mother who testified that she had received the letter. The state moved to admit the letter into evidence and the Petitioner objected asserting there was no envelope or evidence showing the letter was mailed to the victim's parent's house. The trial court overruled the objection finding the Petitioner's objection went to the weight of the evidence and not its admissibility. (App. 665-67.) The PCR court found that the evidence was sufficient for authentication and thus counsel was not deficient for not raising this issue on appeal and that no prejudice could have resulted given the other evidence and writings admitted. (App. 832-33.)

The undersigned notes that when the Petitioner objected to the admission of the letter during the mother's testimony, it was only on the basis that there was no evidence it had been mailed to the mother's house. The Petitioner did not raise any issue as to the authenticity of the letter. Because the Petitioner did not preserve the issue of the authenticity of the letter, appellate counsel was not deficient for failing to raise it on appeal. Furthermore, in any event, as the trial court and PCR Court held, the letter was admissible and the Petitioner's argument regarding the absence of the envelope would merely impact the weight of the evidence and not its admissibility. Accordingly, appellate counsel was not ineffective for failing to raise this issue on appeal.

The Petitioner also contends that appellate counsel was ineffective for failing to raise an issue regarding the admission of a photograph of the victim. At trial, the State offered two photographs of the victim's burned body to show the state of mind of the Petitioner and his actions after the murder. (App. 339, 342.) The Petitioner objected on the ground that the probative value of the photographs was outweighed by their prejudice. *Id*. The State argued they were the least gruesome of approximately fifty photographs and they were

relevant to show the Petitioner's state of mind. *Id.* The Petitioner acknowledged that he had burned the victim's body and pled guilty to the desecration of human remains. (App. 342.) He argued that the photograph was not probative as he did not deny burning the victim's remains. (App. 343.) The court excluded one photograph but allowed the other one into evidence, noting that the probative value outweighed the prejudicial effect, and pointing out that it appeared the body had been placed on a platform in a "ritualistic" manner. (App. 344-45.)[3] The Petitioner raised the issue at PCR. (App. 811-13; 817.) The PCR court denied the Petitioner PCR, finding the photograph was admissible, and additionally no prejudice could have resulted. (App. 833-34.)

"The relevancy, materiality, and admissibility of photographs as evidence are matters left to the sound discretion of the trial court." *State v. Nance*, 320 S.C. 501, 508 (S.C. 1996). "If the offered photograph serves to corroborate testimony, it is not an abuse of discretion to admit it." *Id.* "To constitute unfair prejudice, the photographs must create an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Jackson,* 613 S.E.2d 374, 376 (S.C. 2005) (internal quotation omitted). Here, the trial court allowed one photograph which illustrated the state of the mind of the Petitioner who had burned the victim's body and placed it in a ritualistic pose. The trial court did not allow a second offered photo which was apparently taken closer to the body. Since the photo was admissible, appellate counsel could not have been deficient for failing to raise this issue on appeal. The issue should be dismissed or denied.

---

[3]At trial, a document referred to as the "Calamity" document was admitted in which the Petitioner notes he "built an altar" and made a "burnt offering" of the victim. (App. 455-59). The trial court noted that while he had not seen the "Calamity" document at the time he ruled that the photograph could be admitted into evidence, after hearing the content of the "Calamity" document, he thought the photograph was unquestionably admissible, since it reflected the "ritualistic type situation" described in the "Calamity" document. (App. 464-65.)

18

### 3. Admission of Hearsay

Finally, the Petitioner contends his appellate counsel failed to raise a hearsay issue on appeal. The Petitioner's friend Stanton Wright gave a statement to police. At trial, the solicitor asked Wright to read a portion of it and the Petitioner objected. The trial court overruled the Petitioner's objection. The Petitioner then asked to approach the bench, but the trial court denied the Petitioner's request. Wright then read the part of his statement in which he said that the Petitioner had told Wright that the victim "said that she had sex with another dude before she had sex with [the Petitioner] and she didn't shower." The Petitioner told Wright he then "flipped." (App. 195-200.) During his testimony, Wright became upset on the stand and the trial court sent the jury out. The trial court stated for the record that he had denied the bench conference because he did not want the Petitioner approaching Wright as it was apparent that Wright was upset. The trial court asked the Petitioner what he wished to put on the record. The Petitioner complained that Wright was being coerced or intimidated, and that the solicitor should not be forcing Wright to say what he told others in the past. The judge noted the solicitor's question was proper. (App. 199-200.)

The Petitioner raised this issue in his PCR hearing. The PCR court found that the issue would not have been preserved for appeal because there was no contemporaneous objection, and the Petitioner had failed to show the evidence was inadmissible. (App. 833-34.)

At trial, the Petitioner did not make a specific objection based upon hearsay. He only raised an objection based upon his belief that Wright was being intimidated and coerced. Since the Petitioner did not make a hearsay objection at trial, appellate counsel could not have been deficient for failing to raise a hearsay issue on appeal. *Jackson v. Dugger,* 931 F.2d 712 (11th Cir. 1991) (holding appellate counsel not ineffective for failing to appeal issue not preserved for review; *State v. McWee,* 472 S.E.2d 235 (S.C. 1996) (holding

19

Eighth Amendment challenge to parole eligibility not preserved because no constitutional basis was raised at trial). Accordingly, this issue is without merit.

The PCR Court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Accordingly, this habeas petition is without merit and should be dismissed.

## IV. **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (# 18) be GRANTED and the Petition be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.

                                      s/Bruce Howe Hendricks
                                      United States Magistrate Judge

December 10, 2009
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**