UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED
USDC. CLERK. CHARLESTON. SC

2010 MAR 29  A 8: 26

Weldon W. Stewart, Jr., #295095, )
                                       )
                 Petitioner, )
                                       )
v. )
                                       )
Warden of Lieber )
Correctional Institution, )
                                       )
                Respondent. )

Civil Action No. 8:09-842-SB

**ORDER**

This matter is before the Court upon Petitioner Weldon Stewart, Jr.'s *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] The record contains the report and recommendation ("R&R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636(b)(1) and the local rules of this district. The Petitioner filed timely objections to the R&R, and the matter is ripe for review. See 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to an R&R within fourteen days after being served with a copy of that report).

## BACKGROUND

The Petitioner is incarcerated at the McCormick Correctional Institution pursuant to orders of commitment of the Marlboro County Clerk of Court. In October of 2002, the Marlboro County Grand Jury indicted the Petitioner, who was 19 at the time of the underlying incident, for the murder of his 15 year-old girlfriend and the desecration of her remains. The Petitioner pleaded guilty to desecration of human remains but proceeded

---

[1] Because the Petitioner proceeds *pro se*, the Court holds his pleadings to a less stringent standard than those drafted by attorneys and accords them liberal construction. See Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 401 U.S. 519 (1972).

to trial on the murder charge before the Honorable Paul M. Burch from July 28 to August 1, 2003. At trial, the Petitioner represented himself with public defender Wade R. Crow acting as standby counsel. On August 1, 2003, the jury convicted the Petitioner of the lesser-included offense of voluntary manslaughter, and Judge Burch sentenced him to thirty years of imprisonment for voluntary manslaughter and nine years of imprisonment for the desecration of human remains, to be served consecutively.

The Petitioner filed a timely appeal, and acting Chief Appellate Defender Joseph L. Savitz, III, represented the Petitioner on appeal. On October 21, 2004, Savitz filed with the South Carolina Court of Appeals a petition to be relieved as counsel and an Anders brief, raising the following issue: "The judge erred by refusing to instruct the jury on involuntary manslaughter." (Entry 15-2 at 223.) Despite being granted an extension of time, the Petitioner did not timely submit a *pro se* brief, and on April 20, 2005, the court dismissed the Petitioner's appeal in an unpublished opinion. State v. Stewart, No. 05-UP-284 (S.C. Ct. App. 2005); (Entry 15-2 at 231). The court sent down the remittitur on May 23, 2005.

On April 18, 2006, the Petitioner filed an application for post-conviction relief ("PCR"), alleging that his appellate counsel was ineffective. (Entry 15-2 at 234.) The Honorable John M. Milling held an evidentiary hearing on November 15, 2006. The Petitioner appeared with counsel, Delton W. Powers, Jr., and testified. On January 8, 2007, Judge Milling issued an order denying the PCR application and dismissing it with prejudice. (Entry 15-2 at 278-87.) The Petitioner timely filed a notice of appeal.

Assistant Appellate Defender Katherine H. Hudgins of the South Carolina Office of Appellate Defense represented the Petitioner on his PCR appeal. On October 25, 2007, Hudgins filed a petition to be relieved as counsel and a Johnson petition for a writ of

2

certiorari raising the following issue: "Did the PCR judge err in refusing to find appellate counsel ineffective for failing to argue that the trial judge erred in admitting two unauthorized documents into evidence?" (Entry 15-6 at 3.) On March 13, 2008, the Petitioner filed a *pro se* response to the <u>Johnson</u> petition, raising the following issues:

> Did the PCR court err in failing to find appellate counsel ineffective for failing to argue the trial judge erred in giving a jury instruction on voluntary manslaughter?
>
> Did the PCR court err in failing to find appellate counsel ineffective for failing to argue that trial judge erred in admitting a photograph of the decedent's body into evidence?
>
> Did the PCR court err in failing to find appellate counsel ineffective for failing to argue that the trial judge erred in allowing Stanton Wright to provide hearsay testimony?

(Entry 15-7 at 3, 8, and 14.)

On June 23, 2008, the Petitioner filed a supplemental *pro se* response in which he further discussed the voluntary manslaughter issue. On March 18, 2009, the South Carolina Supreme Court denied the petition and granted counsel's motion to be relieved; the court sent down the remittitur on April 3, 2009.



The Petitioner filed the instant § 2254 petition on March 31, 2009, raising the following grounds, quoted verbatim:

> **Ground One**: Did the trial court deprive me of my constitutional right to due process by failing to instruct the jury on involuntary manslaughter?
>
> **Supporting facts**: The trial court failed to instruct the jury on the requested jury instruction on involuntary manslaughter. There was evidence presented during the trial which supported the jury instruction and the trial court's failure to instruct the jury on this instruction deprived me of a fair trial.
>
> **Ground Two**: Did appellate counsel deprive me of my constitutional right to effective assistance of counsel?

3

**Supporting Facts:** Appellate counsel was ineffective for failing to argue on my appeal: 1) the trial judge erred by charging the jury on voluntary manslaughter when there was no evidence to support the charge, 2) the trial judge admitted two documents that were not authenticated, 3) the trial judge admitted photographs that were irrelevant and prejudicial, and 4) the trial judge allowed hearsay testimony.

(Entry 1 at 5-7.)

On July 13, 2009, the Respondent filed a motion for summary judgment. The Magistrate Judge issued an order on July 15, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Petitioner of the summary judgment procedure and the possible consequences of failing to adequately respond to the motion. On September 17, 2009, the Petitioner filed a response in opposition to the Respondent's motion. On December 10, 2009, the Magistrate Judge issued an R&R, recommending that the Court grant the Respondent's motion for summary judgment. The Petitioner filed written objections to the R&R on December 28, 2009.

## STANDARDS OF REVIEW



I.  **Legal Standard for Summary Judgment**

To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. See

4

Perini Corp. v. Perini Constr. Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## II.  The Magistrate Judge's R&R

This Court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portion of the R&R to which the objection is made and the basis for the objection. Id.

## DISCUSSION

### I.  **Exhaustion of Remedies Pursuant to 28 U.S.C. § 2254**

Relief under § 2254 may be had only after a habeas petitioner has exhausted his state court remedies. "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), cert. denied, 522 U.S. 833 (1997). Stated plainly, in the interest of giving state courts the first opportunity to consider alleged constitutional errors in state proceedings, a § 2254 petitioner is required to "exhaust" all state remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

To exhaust a claim in state court, a person in custody has two primary means of attacking his conviction: filing a direct appeal and/or filing an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160. "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."

5

In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 321 S.C. 563, 564 (1990).

## II. **Procedural Default**

When a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the issue in his federal habeas petition. Smith v. Murray, 477 U.S. 527, 533 (1986). Procedural default can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

## III. **Relationship Between Exhaustion and Procedural Default**

If a federal habeas petitioner has procedurally defaulted his opportunity for relief in the state courts, the exhaustion requirement is technically met and the rules of procedural bar apply. See Matthews, 105 F.3d 907 (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991), Teague v. Lane, 489 U.S. 288, 297-98 (1989), and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996)). Thus, where the state court has not had the opportunity to apply its own procedural bar, the federal court will nevertheless bar the claim where application of the bar is clear. Teague, 489 U.S. at 297-98.

## IV. **Excusing Procedural Default**

Notwithstanding the foregoing, a federal court may consider claims that have not been presented to the highest South Carolina court with jurisdiction in very limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a federal court will review a procedurally defaulted claim if the petitioner can demonstrate cause for the

default and actual prejudice therefrom, and second, a petitioner can rely on the doctrine of actual innocence. Coleman, 501 U.S. at 750.

"Cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Moreover, the claim of cause itself must be exhausted. See Edwards v. Carpenter, 529 U.S. 466 (2000). To establish "actual prejudice," a petitioner generally must show some error. In addition, a petitioner must show an actual and substantive disadvantage as a result of the error, not merely the possibility of harm. Lastly, "actual innocence" is not an independent claim, but a method of excusing default. To prevail under this theory, a petitioner must produce new evidence that was not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999).

## V.    **Habeas Corpus Relief**

For those claims adjudicated on the merits, habeas relief is warranted only if a petitioner can demonstrate that the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. Id. at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on

7

a set of materially indistinguishable facts. Id. at 405-06. A federal habeas court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. Id. at 407-08. Factual determinations made by the state "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## VI. Analysis

In his motion for summary judgment, the Respondent asserts that the Petitioner's first ground for relief (that the trial court deprived him of his right to due process by failing to instruct the jury on involuntary manslaughter) is (1) procedurally defaulted, (2) not cognizable on federal habeas review, and (3) without merit. Next, the Respondent asserts that the claims asserted in the Petitioner's second ground (that appellate counsel was ineffective for failing to raise several issues on appeal), are all procedurally defaulted and/or without merit. The Petitioner filed a response to the Respondent's motion for summary judgment, opposing all of the Respondent's arguments.

After review, the Magistrate Judge agreed with the Respondent that ground one is procedurally defaulted and that the claim fails on the merits. In addition, the Magistrate Judge agreed with the Respondent that the Petitioner's second ground for relief failed on the merits.

The Petitioner filed timely objections to the R&R, essentially objecting to the R&R "in its entirety." (Entry 27 at 20). Specifically, the Petitioner asserts that none of his claims are procedurally defaulted and that even if they were, he can establish cause and prejudice, as well as actual innocence, to excuse the procedural default. The Petitioner

8

also asserts that all of his claims succeed on the merits in light of the overwhelming evidence in the record and the applicable law.

### A. Ground One

As previously mentioned, the Petitioner asserts that the trial court deprived him of due process by failing to instruct the jury on involuntary manslaughter. After a review of the record, including the Petitioner's filings and the R&R, the Court agrees with the Magistrate Judge that this claim is without merit.[2]

First, as noted by the Magistrate Judge, the Petitioner did not present this issue on appeal in the context of a federal constitutional claim. Nevertheless, even if the Petitioner did properly raise this claim, it still fails on the merits.

In Beck v. Alabama, the United States Supreme Court held that capital defendants have the due process right to receive a jury instruction on a lesser-included offense "when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense-but leaves some doubt with respect to an element that would justify conviction of a capital offense." 447 U.S. 625 (1980). "But [a] defendant is not entitled to have the jury

---

[2] As an initial matter, the Court is not persuaded by the Respondent's argument that the Petitioner's claims are procedurally defaulted pursuant to the South Carolina Supreme Court's decision in State v. Lyles, 381 S.C. 442, 443, 673 S.E.2d 811, 812 (S.C. 2009). In Lyles, the court noted that "a decision of the Court of Appeals after conducting a review pursuant to Anders is not a decision on the merits of the appeal, but simply reflects that the appellate court was unable to ascertain a non-frivolous issue which would require counsel to file a merits brief." Id. At 444-45, 673 S.E.2d at 813. Based on this language, the Respondent seems to argue that in denying Anders and/or Johnson petitions, an appellate courts does not consider the merits of a petitioner's claims, resulting in those claims being procedurally defaulted. After consideration, the Court disagrees with the Respondent's attempt to apply Lyles in this manner and finds that the denial by an appellate court of discretionary review of a PCR action does not by itself result in procedural default under Coleman. See also McCoy v. Cartledge, 2010 WL 680258 (D.S.C. Feb. 24, 2010).

9

instructed as to lesser degrees of the crime simply because the crime charged is murder." Bates v. Lee, 308 F.3d 411, 418 (4th Cir. 2002) (internal quotation omitted). Instead, "due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction." Hopper v. Evans, 456 U.S. 605 (1982).

The Fourth Circuit has not, in a published opinion, addressed the question of whether due process requires that a trial court instruct a jury on lesser included offenses in non-capital cases. But in an unpublished decision, Robinson v. North Carolina Attorney Gen., the Fourth Circuit explained:

> the Supreme Court has never held that due process requires lesser-included instructions in non-capital state trials . . . [and] a review of decisions from other courts of appeals establishes that there is no consensus on this question. Consequently, a decision in [the Petitioner's favor] would require the enunciation and retroactive application of a new rule, in violation of § 2254(d)(1) and Teague v. Lane, 489 U.S. 288 (1989).

238 F.3d 414 (4th Cir. 2000) (table) (unpublished).

Accordingly, this Court declines to find that due process requires an involuntary manslaughter instruction in this case. Thus, the Court finds that the state court's decision not to charge on the lesser offense of involuntary manslaughter was not contrary to nor an unreasonable application of clearly established Federal law as decided by the United States Supreme Court, and the Court rejects the Petitioner's claim. See Cobbs v. Michael McCall, 2010 WL 936782 (D.S.C. March 16, 2010); Epps v. Bodison, 2009 WL 960792 (D.S.C. April 8, 2009); Bates v. Bodison, 2009 WL 2423766 (D.S.C. Aug. 5, 2009).

### B. Ground Two

In ground two, the Petitioner contends that his appellate counsel was ineffective for failing to raise the following issues on appeal (1) that the trial court erred in charging the

jury on voluntary manslaughter; (2) that the trial court erred in admitting two unauthenticated documents and an irrelevant, prejudicial photograph; and (3) that the trial court erred in allowing hearsay testimony. After a thorough review of the entire record, the Court agrees with the Magistrate Judge that the Plaintiff's claims fail.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that a meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Id. at 687-98. The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential" under this standard, so as not to "second-guess" the performance. Strickland, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1297-99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1476 (4th Cir. 1985). To establish prejudice and thereby fulfill the second prong of the ineffective assistance test, the challenging defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694-95.

### 1. Voluntary Manslaughter Charge

The Petitioner claims that appellate counsel was ineffective for failing to argue that the trial court's voluntary manslaughter instruction was unsupported by the record. During

11

the charge hearing, the Petitioner requested a charge on accidents and involuntary manslaughter. (Entry 15-2 at 129.) The State responded that it did not understand the request for an involuntary manslaughter charge. Specifically, Mr. Blake stated:

> I don't see that the Defendant [has] in any way claimed criminal negligence. He says it was an accident. That would be a complete defense to the case. That would be a not guilty verdict. Involuntary manslaughter would mean that the Defendant had acted in a reckless manner causing the death, and there has been no evidence come forward of that.

(Entry 15-2 at 131.) The Court then asked the Petitioner whether he preferred an instruction on accident. The Petitioner responded, "Yes, sir." (Entry 15-2 at 131.) The Court later acknowledged the Petitioner's request for a charge on involuntary manslaughter, but stated that it was "out" because "he agreed to go with accidents." (Entry 15-2 at 143.) Next, the State requested a charge on voluntary manslaughter, stating:

> There is evidence of heat of passion. One of the witnesses gave testimony and a written statement that Mr. Steward said he got mad at his girlfriend and he flipped. Furthermore, there is extensive evidence of relationship with the – the victim's relationship with another boy. And Mr. Stewart's continued aggravation of that, both before he was in jail and after he committed the crime.

(Entry 15-2 at 136.) The Petitioner objected to the Court charging both voluntary manslaughter and murder, stating, "The state is trying to prove voluntary manslaughter. That only that be submitted to the jury. And the state is trying to prove murder and only that be submitted. I'd like to object to both of them being submitted." (Entry 15-2 at 136.) Importantly, the Petitioner did not object to the inclusion of a voluntary manslaughter charge on the basis that the evidence in the record did not support the charge. Thus, this issue was not preserved for appellate review.

Nevertheless, the Petitioner raised this claim on PCR, asserting that there was no

12

evidence of legal provocation to support the charge. The PCR court rejected the claim, finding that the Petitioner's statements to police that the victim pulled a knife or razorblade constituted sufficient legal provocation to support the voluntary manslaughter charge.

After a thorough review of the record, the Court agrees with the Magistrate Judge that the record contained sufficient evidence to support the voluntary manslaughter charge. Although the Petitioner now disagrees and asserts that he knew the victim did not intend to harm him when she pulled the box cutter on him, the evidence presented at trial (including <u>but not limited to</u> the Petitioner's differing versions of how the victim died) created a number of factual issues for the jury. And ultimately, the Court has no difficulty finding that the voluntary manslaughter charge was appropriate based on <u>all</u> of the evidence presented. Therefore, the Court agrees with the PCR court that appellate counsel did not err in failing to argue on appeal that the voluntary manslaughter charge was not supported by the record. Moreover, the court agrees with the PCR court that the Petitioner has not shown prejudice.

Based on the foregoing, the Court does not find that the PCR court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, this claim is denied.

### 2. Admissibility of Evidence

The Petitioner next contends that appellate counsel was ineffective for failing to raise on appeal an issue regarding the admission of two allegedly unauthenticated documents: (1) the "motive" letter and (2) a letter to the victim's mother. The Petitioner also alleges that appellate counsel was ineffective for failing to argue on appeal that the

13

trial judge admitted an irrelevant and unduly prejudicial photograph.

###    a.    The Letters

At trial, Detective Gurley testified that the Petitioner personally handed her the "motive" letter (which, *inter alia*, described various theories on who killed the victim) and that she assumed the Petitioner wrote it since the handwriting resembled the Petitioner's. The trial court admitted the "motive" letter into evidence despite the Petitioner's objections that he had not given Detective Gurley the letter and that the letter had not been analyzed by an expert for a handwriting match.

Next, with respect to the letter to the victim's mother, the Petitioner testified at trial that he had not written the letter, and the Petitioner objected to its admission, asserting that there was no envelope or evidence showing that it was mailed to the victim's mother's house.[3] The trial court overruled the Petitioner's objection and admitted the letter, finding that the Petitioner's objection went to the weight of the evidence and not its admissibility.

The PCR court rejected the Petitioner's claims, finding that the letters were admissible and that it was for the jury to decide whether the handwriting was, in fact, the Petitioner's. Moreover, the PCR court found that even if the letters were inadmissible, their admission was not prejudicial in light of the other statements and documents written by the Petitioner and presented at trial. The PCR court found that the Petitioner failed to prove that his appellate counsel was ineffective in this respect or that he was prejudiced by counsel's failure to raise this issue on appeal.

After a thorough review of the record, the Court agrees with the Magistrate Judge

---

[3] The victim's mother later testified that she had received the letter.

that this claim is without merit. First, as noted by the Magistrate Judge, authenticity of documents may be established by indirect or circumstantial evidence. State v. Wilson, 145 S.E.2d 20 (S.C. 1965). And alleged deficiencies in authentication testimony go to weight, not admissibility. Here, the Petitioner admitted writing other documents that were in evidence, so the jury could compare the handwriting in the documents. Moreover, Detective Gurley testified that the Petitioner personally handed her the "motive" letter, and the victim's mother testified that she received the other letter in the mail.

Moreover, even if the letters were inadmissible, the Court agrees with the Magistrate Judge that the Petitioner has failed to show any prejudice, particularly in light of all of the evidence presented at trial. Based on all of the foregoing, the Court finds that the Petitioner has failed to show that the PCR court's adjudication of this issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, this claim is denied.

### b. The Photograph of the Victim

At trial, the State offered two photographs of the victim's burned body to show the Petitioner's state of mind and his actions after the death. The Petitioner objected on the ground that the prejudicial value of the photographs outweighed their probative value. The State countered that the photographs were the least gruesome of the fifty photographs and that they were relevant to show the Petitioner's state of mind as he had acknowledged burning the body and had pleaded guilty to the desecration of human remains. The court allowed one of the photographs into evidence, noting that its probative value outweighed its prejudicial effect, that it was relevant to show the Petitioner's state of mind, and that it

15

appeared from the photograph that the body had been placed on a platform in a "ritualistic" manner. (Entry 15-1 at 346.)

The PCR court denied this issue, noting that the relevance and admissibility of photographs as evidence are matters left to the sound discretion of the trial court. The PCR court found that the Petitioner failed to show (1) that appellate counsel was ineffective for failing to brief this issue or (2) that the Petitioner was prejudiced as a result.

After review, the Court agrees with the Magistrate Judge that the photograph was admissible and that appellate counsel was not deficient for failing to raise this issue on appeal. Accordingly, this claim is denied.

### 3. Admission of Hearsay

Finally, the Petitioner alleges that appellate counsel was ineffective for failing to raise a hearsay issue on appeal. At trial, one of the Petitioner's friends, Stanton Wright, was asked to read a passage of the statement that he had given to police. The trial court overruled the Petitioner's objection and denied the Petitioner's request to approach the bench. Wright then read his statement, which stated: "As we walked towards the path, he told me that [the victim] said that she had sex with another dude before she had sex with him and she didn't shower. And then he – and then he said that he flipped." (Entry 15-1 at 198.) When Wright became upset, the court sent the jury out and asked the Petitioner what he wished to put on the record. The Petitioner complained that Wright was being coerced or intimidated. The court later asked Wright whether he was being threatened or intimidated, to which Wright responded, no.

The PCR court addressed this issue, noting that the Petitioner did not lodge a contemporaneous hearsay objection when Wright testified, and that appellate counsel

16

therefore could not have been deficient for failing to raise the issue on appeal. The Magistrate Judge determined that the PCR Court's adjudication of this issue was not contrary to, nor an unreasonable application of, clearly established federal law. Moreover, the Magistrate Judge determined that the PCR court's adjudication of this issue was not based upon an unreasonable determination of facts in light of the state court record. After review, the Court agrees with the Magistrate Judge, and accordingly, this claim is denied.[4]

## CONCLUSION

After a review of the entire record, including the R&R and the Petitioner's objections, the Court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the Court adopts the Magistrate Judge's R&R (Entry 25); overrules the Petitioner's objections (Entry 27); and grants the Respondent's motion for summary judgment (Entry 14).[5]

**IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

March 26, 2010
Charleston, South Carolina

---

[4] Additionally, the Court agrees with the Respondent that the statement was admissible. First, the Petitioner's own statement would not constitute hearsay pursuant to Rule 801(d)(2) of the Federal Rules of Evidence. Moreover, what the victim told the Petitioner would not constitute (a second layer of) hearsay because it was not offered to prove the truth of the matter asserted but was instead offered to show the effect on the listener. See Fed. R. Evid. 801(c); United States v. Guerrero-Damian, 241 F. App'x 171, 173 (4th Cir. 2007) (unpublished) (citation omitted) ("A statement is not hearsay if it is offered to prove knowledge, or show the effect on the listener or listener's state of mind.").

[5] Because the Court does not find that the Petitioner has made a substantial showing of the denial of a constitutional right, the Court denies a certificate of appealability. See Rule 11(a) of the Rules Governing § 2254 Cases In the United States District Courts; 28 U.S.C. § 2253(c)(2).